IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

CHRISTINA MONTOYA,

      Plaintiff,

          v.                        No. CIV-07-1078 BB/ACT

AMERICA ONLINE, INC.,

      Defendant.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on a motion for summary judgment (Doc. # 53) by the defendant, America Online, Inc. ("AOL").[1]  The plaintiff, Christina Montoya, is a former employee of AOL.  Her claims include: (1) hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. (1964) ("Title VII"); (2) constructive discharge under Title VII; (3) retaliation under Title VII; (4) intentional infliction of emotional distress under New Mexico tort law; and, (5) she seeks an injunction stopping AOL from further discrimination and retaliation.  After reviewing the submissions of the parties, the Court finds that AOL's summary-judgment motion should be GRANTED.

### Standard for Reviewing Motions for Summary Judgment

Summary judgment is not "a disfavored procedural shortcut but rather [it is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and

---

[1]AOL also filed a motion to strike Ms. Montoya's exhibits (Doc. # 66).  Since AOL's summary-judgment motion will be granted, however, its motion to strike is hereby DENIED as moot.

inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)

(quoting FED. R. CIV. P. 1).  It is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  FED. R. CIV. P.  56(c)).  In evaluating a motion for summary judgment, the Court views

the evidence and draws all reasonable inferences therefrom in the light most favorable to the non-

moving  party.  *See Martin v. Kansas*, 190 F. 3d 1120, 1129 (10th Cir. 1999).

An issue of fact is "material" if it is essential to the proper disposition of the claim.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 2482 (1986).  In essence, the inquiry is "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  *Id*.

## Factual Background

The following facts are either uncontroverted or, where controverted, construed in the

light most favorable to Ms. Montoya, the non-moving party.  Ms. Montoya began working at

AOL's Albuquerque Call Center in August 2002.  She met Travis Moon, a fellow Customer Care

Consultant, in late 2004.  Montoya Dep. 142:13-23.  This case arises out of a brief romance gone

awry between Ms. Montoya and Mr. Moon, and Mr. Moon's ensuing sexual harassment.

Soon after AOL assigned Mr. Moon to work on Ms. Montoya's "team," he initiated on-

line and face-to-face conversations with Ms. Montoya.  *See id.* at 142:24-143:1.  During this

time, Ms. Montoya was ending a relationship with her live-in boyfriend and the father of her

children, Patricio Mejia.  After working together for some weeks, Mr. Moon invited Ms.

Montoya to join him for dinner.  She accepted, and the outing occurred without incident.

2

Over a week later, Ms. Montoya agreed to have dinner with Mr. Moon again, leading to a night of consensual sexual intercourse in an Albuquerque hotel.  According to Ms. Montoya, it was immediately following that encounter that Mr. Moon began behaving in a disturbing manner. *See id.* at 149:18-150-7.[2]  After this one-night encounter, she grew uncomfortable around him and began "separating [her]self," not least because he increasingly made unwanted sexual advances and touched her inappropriately at work.  *Id.* at 154:9-15; *see also* Pl.'s Mem (Doc. # 60 at 2).  Although she found this conduct to be offensive, Ms. Montoya admits she never reported it to AOL.  *See* Montoya Dep. 274:20-22.

Then, in March 2005, Mr. Mejia, Ms. Montoya's on-and-off boyfriend, began receiving unusual electronic mail ("e-mail") at an e-mail address Mr. Mejia and Ms. Montoya shared.  *Id.* at 195:5-17.  These e-mails came from an unidentified source and apparently aimed to alert Mr. Mejia to the sexual encounter between Mr. Moon and Ms. Montoya.  *Id.* at 216:24-217:6; *see also* Def.'s Mem. (Doc. # 54 at 3).  E-mails of this nature continued, and soon Mr. Mejia began forwarding the messages to Ms. Montoya at work.  *See, e.g.,* Pl.'s Resp. (Doc. # 25 at 3-4).

Later that month, Ms. Montoya informed a supervisor at AOL that she was receiving anonymous harassing e-mails at work and at home.  *Id.* at 3.  AOL's fraud department tried to track the source of the e-mails and discovered that the account from which they were sent was established at the Rio Rancho public library.  Pl.'s Mem. (Doc. # 60 at Exh. I); Sedillo Aff. (Doc. # 54 at Exh. 2 ¶ 8).  That, however, was the only information the AOL fraud department could gather, and the e-mailer's identity thus remained unknown.

---

[2]For example, just after intercourse, Mr. Moon told Ms. Montoya that he had once discharged a shotgun in an ex-girlfriend's house on suspicions of infidelity.

The e-mailer's identity became apparent about a month later, however, when Mr. Mejia and Ms. Montoya received two e-mails which described in graphic terms the sexual encounter between Mr. Moon and Ms. Montoya.  *See id.* at 4.  By then, Ms. Montoya strongly suspected Mr. Moon, as no one else would be privy to such intimate details.  Also, she discovered then that Mr. Moon had accessed her work e-mail account, thus procuring her various e-mail addresses. She reported this to her supervisors at AOL.

By mid-April 2005, then, one of Ms. Montoya's supervisors, Audra Sedillo, knew that Ms. Montoya suspected Mr. Moon of harassing her via e-mail.  *See* Sedillo Aff. (Doc. # 54 at Exh. 2 ¶ 9).  Moreover, in early May, Ms. Montoya received yet another sexually explicit e-mail at home, and she reported it to a human resources official at AOL.  Pl.'s Resp. (Doc. # 25 at 4). A week later, the e-mails continued, and Ms. Montoya complained to Craig Alter, AOL's Human Resources Generalist, that Mr. Moon had been staring at her while she worked.  Mr. Alter responded by telling Mr. Moon to stay away from Ms. Montoya.  *See* Alter Aff. (Doc. # 54 at Exh. 7 ¶ 5).  He also told Mr. Moon to change workstations so as to be beyond Ms. Montoya's range of vision, and he allowed Ms. Montoya to sit anywhere she could to avoid Mr. Moon—a privilege not extended to most employees of AOL Call Centers, who were required to sit in designated areas.  Pl.'s Mem (Doc. # 60 at 24); Def.'s Mem. (Doc. # 54 at 20).  Nevertheless, Ms. Montoya claims that Mr. Moon ignored Mr. Alter's admonitions by "follow[ing] her and [getting] close enough to have eye contact."  *Id.*

Dissatisfied with AOL's response, Ms. Montoya sought and received a restraining order compelling Mr. Moon to remain at least 100 yards away from her at all times.  Montoya Dep.

432:24-433:24.  She notified Ms. Sedillo and Mr. Alter of the restraining order, and AOL

suspended Mr. Moon.  Sedillo Aff. (Doc. # 54 at Exh. 2 ¶ 12); Montoya Dep. 442:19-22.[3]

When AOL allowed Mr. Moon to return from his suspension, it adjusted his assignments,

such that his schedule never overlapped with Ms. Montoya's.  Montoya Dep. 443:1-12.  Also,

AOL gave Ms. Montoya permission to arrive late for her shift and to enter through a side door so

as to avoid any chance encounters with Mr. Moon.  *Id.* at 505:8-17.  Nevertheless, even after Mr.

Moon's reassignment, he and Ms. Montoya were at the call center simultaneously on at least

three occasions.  Though his presence made Ms. Montoya uncomfortable, she acknowledges that

Mr. Moon did not speak to, touch, or e-mail her on these occasions.  *Id.* at 508:14-21.  Ms.

Montoya did contact the police, however, each time she saw Mr. Moon at the call center—on

May 16, 2005, May 24, 2005, and August 19, 2005—to report him for violating the restraining

order.  Pl.'s Mem. (Doc. # 60 at 15).

Meanwhile, on May 12 and May 26, 2005, AOL gave Ms. Montoya oral and written

reprimands for unexcused absences at work.  AOL also temporarily demoted her to "Tier III," a

shift with a lower volume of calls.  Pl.'s Resp. (Doc. # 60 at 16).  She alleges these reprimands

and the demotion were in retaliation for her complaints about Mr. Moon and her calls to the

police.  *Id.*  Ms. Montoya further alleges that one of her supervisors at AOL, Kate Rogholt,

minimized the harassment by calling her "unreasonable" and "irrational."  *Id.* at 10, 18.  She also

claims that once, when she telephoned the police to report Mr. Moon's violation of the

-------

[3]Although Ms. Montoya alleges that Mr. Moon was at the call center on May 16, the day
AOL claims it suspended him, she acknowledges that he was not allowed to return to work until
May 26—thus making his suspension at least 9 days in duration.  *See, e.g.,* Montoya Dep.
442:19-22 ("I know they suspended him for some time").

restraining order, AOL supervisors warned Mr. Moon that the police were on their way, telling him to leave immediately.  Pl.'s Mem. (Doc. # 60 at 2) ("AOL made it more difficult for Ms. Montoya [to enforce the restraining order.]").  For its part, AOL retorts that the reprimands and demotion were instead a consequence of Ms. Montoya's "unplanned" absences during that period.  *See, e.g.,* Suval Aff. (Doc. # 54 at Exh. 8 ¶¶ 11-16).

Finally, on August 23, 2005, just after Ms. Montoya had contacted the police to report Mr. Moon for a third time, she found pornographic photographs posted on the front door of her home.  Pl.'s Mem (Doc. # 60 at 2).  Ms. Montoya quit her job at AOL the following day.  *Id.*

Ms. Montoya sues AOL alleging violations of Title VII and New Mexico tort law.  In particular, she claims that: (1) AOL subjected her to a hostile work environment; (2) it constructively discharged her by making her working conditions unbearable; (3) it retaliated against her for complaining of Mr. Moon's harassment; and, (4) it intentionally inflicted emotional distress on her by failing to stop Mr. Moon's harassment.  The Court addresses each claim in turn.

## Discussion

## A.  Ms. Montoya Did Not Establish Hostile Work Environment Under Title VII.

Title VII prohibits discrimination by employers against any employee with respect to compensation, terms, conditions, or privileges of employment based on sex.  42 U.S.C. § 2000e-2(a)(1).  Ms. Montoya asserts her first claim on the theory that Mr. Moon's harassment, and AOL's alleged failure to prevent it, created a hostile work environment under Title VII.

To withstand a motion for summary judgment on this claim, Ms. Montoya must prove that: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3)

6

the harassment was based on sex; and, (4) the harassment was severe or pervasive enough to create an abusive working environment. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007); *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1262-63 (10th Cir. 2005). In addition, even if she satisfies these elements, the plaintiff must further show that AOL had knowledge of the hostile work environment but did not adequately respond. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998). In other words, Ms. Montoya must show that AOL "condone[d] or tolerate[d] the creation of a hostile work environment." *Tademy v. Union Pacific Corp.*, 520 F.3d 1149, 1157 (10th Cir. 2008) (internal brackets omitted). This is known as the "negligence theory" of hostile work environment. *See, e.g., Adler, supra* at 673.

That Ms. Montoya was subjected to unwanted harassment, and that she was a member of a protected group, are undisputed. Thus, the questions before this Court  claim are: (1) whether the harassment to which Ms. Montoya was subjected was based on her sex; (2) whether the harassment was severe or pervasive enough to create an abusive environment at AOL; and, (3) whether AOL failed to adequately respond, thereby condoning the harassment.

I.  Whether Mr. Moon's Harassment Was Based on Ms. Montoya's Sex

Turning to the first issue set forth above—whether the harassment was based on sex—the Court must distinguish between discrimination based on sex and mistreatment based on personal animosity due to a failed relationship. Indeed, while Title VII prohibits discrimination, a plaintiff cannot turn a personal feud into a sex discrimination case, and the plaintiff's gender, rather than her "former intimate place in the [harasser's] life", must cause the harassment. *Succar v. Dade County Sch. Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000). For Ms. Montoya to withstand AOL's

summary-judgment motion, therefore, she must show that the harassment to which Mr. Moon subjected her was based on her sex, not his anger over their failed relationship.

Whether she has done this is definitely debatable. The evidence indicates that some of Mr. Moon's harassment—touching her inappropriately at work, making unwanted sexual advances, and sending her anonymous e-mails—may have been motivated more by his desire to rekindle their romance than anything else. *See, e.g.,* Pl.'s Resp. (Doc. # 60 at 7) (explaining that when Ms. Montoya confronted Mr. Moon about his harassment, he asked whether "their relationship" was over) *and* Montoya Dep 352:1 (quoting Mr. Moon as saying, "It's really over?").[4] What is more, that Mr. Moon stared at Ms. Montoya ominously as she worked indicates personal hostility towards her as much as anything having to do with her sex. *Cf. Succar*, *supra* 229 F.3d at 1345 (affirming the district court's finding that a co-employee's verbal harassment was motivated by the harasser's "contempt" for the plaintiff following their failed relationship).

On the other hand, at some point after March 2005, once Ms. Montoya had unequivocally clarified that she was not romantically interested in Mr. Moon by reporting his behavior to AOL, a reasonable juror could infer that his continued sexual harassment was based on her sex. *See, e.g., Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1246 (11th Cir. 1998) ("When a person sexually harasses another, *i.e.*, makes comments or advances of an erotic . . . nature, we

---

[4]Also, Mr. Moon's initial harassment—touching Ms. Montoya inappropriately and making sexual advances—occurred before AOL had either actual or constructive knowledge of the situation. As explained in the constructive discharge section of this opinion *infra*, AOL cannot be liable for Mr. Moon's behavior of which it had no knowledge.

infer that the harasser is making advances towards the victim because [she] is a member of the gender the harasser prefers.") (internal quotations omitted).

In any event, without direct evidence, ascertaining Mr. Moon's subjective motives is difficult, and because the Court finds that AOL did not condone Mr. Moon's behavior once it was apprised of the situation, resolving this question, and the question of whether the harassment was sufficiently severe or pervasive to constitute a hostile work environment, is unnecessary. *See Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000); *Scarberry v. Exxonmobil Oil Corp.*, 328 F.3d 1255, 1257 (10th Cir. 2003) ("In [negligence theory Title VII] cases, the court may simply examine the record, including the undisputed evidence, to determine whether [the employer's] responses to claims of sexual harassment were reasonable as a matter of law.").

## II.  Whether AOL Responded to Ms. Montoya's Complaints With Appropriate Action

Turning to the issue of whether AOL responded adequately, therefore, Ms. Montoya must establish "that a specific basis exists for imputing the conduct that created the hostile work environment to the employer."  *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). When a co-employee of the plaintiff is the harasser, an employer will generally not be liable unless it "either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it."  *Metcalf v. Metro. Life, Inc.*, 961 F. Supp. 1536, 1541 (D.Utah 1997) (citing *Hirschfeld v. New Mexico Corr. Dep't*, 916 F.2d 572, 576 (10th Cir. 1990)).  As it is undisputed that AOL provided an avenue of complaint, the theory on which Ms. Montoya bases her claim is that AOL knew of the harassment but did not respond with corrective action effectively enough.

The evidence submitted, however, does not support that theory.  When AOL first learned of harassing e-mails, its fraud department initiated an investigation that, while unsuccessful, was

a good-faith attempt to identify the source of the e-mails.  *See Holmes v. Utah Dep't of Workforce Serv.*, 483 F.3d 1057, 1068 (10th Cir. 2007) (finding that an employer's prompt investigation into complaints of sexual harassment is sufficient to grant summary judgment for the employer on a hostile work environment claim).  In addition, Mr. Alter responded to Ms. Montoya's complaints by warning Mr. Moon to keep his distance from her and giving Ms. Montoya special permission to sit anywhere in the call center.[5]

Furthermore, AOL acted on the restraining order by suspending Mr. Moon and rescheduling him so that he and Ms. Montoya would no longer be at their workstations simultaneously.  While this was not the most draconian action AOL had at its disposal, it was reasonably calculated to end the harassment.  *See, e.g., Hathaway v. Runyon*, 132 F.3d 1214, 1228 (8th Cir. 1997) (employers should respond to complaints of harassment with "prompt remedial action reasonably calculated to end the harassment.") (internal quotations omitted).  *Cf. Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992) ("Not every response to a complaint of sexual harassment should take the form of a discharge.") (internal brackets omitted).  Also, when AOL granted Ms. Montoya special permission to arrive late for her shift and to enter through a side door, it did so to protect her from Mr. Moon.

In addition, Ms. Montoya alleges that AOL made it more difficult to enforce the restraining order.  However, she bases that allegation on the fact that AOL told Mr. Moon to leave the premises when Ms. Montoya contacted the police, and her description of AOL's motive in doing so—that it favored Mr. Moon in the dispute—amounts to pure conjecture.  Also, irrespective of AOL's motive, its ordering Mr. Moon to leave before the police arrived physically

---

[5]The call center is apparently two football fields long and contains hundreds of pods.

separated the two employees, a result that Ms. Montoya desired when she obtained the restraining order and when she telephoned the police to enforce it. *See* Pl.'s Resp. (Doc. # 60 at 25) (describing the plaintiff's disappointment at the police officer's inability to force Travis Moon to leave work premises because the "restraining order was not specific" enough); *see also Seils v. Rochester City Sch. Dist.*, 192 F. Supp.2d 100, 110 (W.D.N.Y. 2002) ("Title VII does not convey upon an employee the . . . right to demand that a workplace dispute be resolved in a way that is most attractive to her. Title VII simply requires that the remedial action taken be reasonably calculated to end the sexual harassment").

Lastly, Ms. Montoya asserts that Kate Rogholt downplayed Mr. Moon's harassment, thereby belittling its effect. This, however, only proves that one supervisor at AOL was unsympathetic to her plight. The legally relevant factor is not the attitude of a particular supervisor, but AOL's remedial actions in the face of Ms. Montoya's complaints. *See, e.g., Cerros v. Steel Techs., Inc.*, 398 F. 3d 944, 954 (7th Cir. 2005) (an "employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring."). For the reasons discussed above, AOL's various responses were legally adequate. Thus, because AOL responded to Mr. Moon's harassment as Title VII requires, its summary-judgment motion on the hostile work environment claim should be GRANTED.

**B. Ms. Montoya Did Not Establish Constructive Discharge Under Title VII.**

In addition to claiming hostile work environment, Ms. Montoya claims that she was constructively discharged under Title VII. To support such a claim, Ms. Montoya must produce evidence that AOL, "by its illegal acts, made working conditions so difficult that a reasonable

11

person in Ms. Montoya's position would feel compelled to resign." *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1514 (10th Cir. 1997); *see also Pennsylvania State Police v. Suders*, 542 U.S. 129, 133, 148 (2004) (likening constructive discharge to an extreme case of hostile work environment—"harassment ratcheted up to the breaking point"); and *Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir. 2004) ("Essentially, a plaintiff must show that she had *no other choice* but to quit.") (emphasis in original).  Plaintiffs thus bear a heavy burden in providing sufficient evidence to withstand summary judgment on constructive discharge claims.

To that end, Ms. Montoya presents the following evidence.  She asserts that from January 2005 through March 2005, Mr. Moon made unwanted sexual advances and touched her inappropriately.  However, she acknowledges that AOL had neither actual nor constructive knowledge of this harassment.  Montoya Dep. 274:20-22.  That AOL cannot be liable for harassment of which it had no knowledge is axiomatic.  *See, e.g., Harsco Corp.*, *supra* 475 F.3d at 1186 (holding that an employer can only be liable under Title VII if it has actual or constructive knowledge of harassment).

Beginning in March 2005, Ms. Montoya suffered harassment in the form of explicit e-mails.  Much of this harassment—such as the e-mails sent from the Rio Rancho Public Library and elsewhere—did not occur on AOL's premises.  This is relevant because employers are generally not liable under Title VII for acts their employees take against another employee away from work premises.  *See Anderson v. Adam's Mark Hotels & Resorts*, 2000 WL 390107 *1 n.1 (10th Cir. April 18, 2000) (unpublished) ("An employer . . . does not have a duty to supervise employees in their off-duty time unless the employee is on the employer's premises....") (internal quotations omitted); *see also Feliciano v. Alpha Sector, Inc.*, 2002 WL 1492139 (S.D.N.Y. July

12

12, 2002) (unpublished) (Generally, "employers are not responsible under Title VII for hostile sexual acts resulting from non-work-related, off-duty interactions between co-employees.").

Other incidents of alleged harassment include Ms. Montoya's claim that her then-boyfriend, Mr. Mejia, was attacked by three unknown assailants outside his home.  However, since Mr. Mejia—rather than Ms. Montoya—was the victim of this attack, since it occurred off work premises, and because the evidence reveals no indication that Mr. Moon was involved, the Court does not consider it relevant to its analysis.

Lastly, Ms. Montoya asserts that Mr. Moon stared at her in an intimidating manner while she worked.  Unlike Mr. Moon's early physical harassment, most of the e-mails he sent, and the attack on Mr. Mejia, such alleged staring actually occurred at the call center after Ms. Montoya had notified AOL of Mr. Moon's behavior. *See* Pl.'s Resp. (Doc. # 60 at 12).

In light of the legal rules discussed above, the actions of Mr. Moon for which AOL may be liable are limited to those he committed while he was at the workplace, and those of which AOL had actual or constructive knowledge.  *See Holmes*, *supra* 483 F.3d at 1068 (finding that while the actions of a former employee were themselves severe harassment, they occurred off-site and thus could not be imputed to the employer).  At bottom, these amount to little more than sporadic e-mails and "intimidating" staring.  Such harassment is arguably insufficient for hostile work environment claims, and it is safe to say it does not meet the high threshold required of constructive discharge claims.  *See Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1260 (10th Cir. 1998) (holding that a co-worker's frequent staring, in conjunction with lewd comments, needless touching, and looking down the plaintiff's blouse still insufficient for a hostile work

environment claim); *see also Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80 (1998) (Title VII does not set forth a "general civility code for the American workplace").

Perhaps most important, once she obtained the restraining order, AOL tried to ensure that Ms. Montoya would never again encounter Mr. Moon at work.  Though AOL's efforts were not altogether successful, they resulted in only brief and occasional instances in which Mr. Moon was in Ms. Montoya's vicinity at work.  Further, those acts of harassment inside the workplace which preceded the restraining order, such as Mr. Moon's staring, touching, and sending e-mails, had not occurred for months when Ms. Montoya resigned.  Indeed, in the four months prior to her resignation—from May 2005 through August 2005—the evidence indicates that Ms. Montoya encountered Mr. Moon at work just three times, and each time he was violating AOL's policies.  These encounters may have been unpleasant for Ms. Montoya, but a reasonable jury could not find that they were so intolerable a person in her position would have no choice but to resign. *See, e.g., Sanchez v. Denver Pub. Schools*, 164 F.3d 527, 534 (10th Cir. 1998) (finding work conditions, which were made "extremely difficult" by the employer's acts, to the point that the employee's health was jeopardized, still insufficient for a constructive discharge claim).

Finally, Ms. Montoya resigned after Mr. Moon placed pornographic pictures on Ms. Montoya's doorstep—an act that, while reprehensible, occurred in a location over which AOL had no control.[6]  Since it mostly occurred outside the workplace, Ms. Montoya had no reason to

---

[6]Ms. Montoya asserts that the real reason for her resignation on August 23, 2005 was that Kate Rogholt, an AOL supervisor, "berate[d]" and "belittled" her in a meeting for placing "unreasonable" demands on AOL's management.  This fact is unpersuasive on the constructive discharge claim because, as discussed, this meeting came after AOL had suspended Mr. Moon, rescheduled him, and admonished him to stay away from Ms. Montoya—actions which resulted in four months of employment for Ms. Montoya in which she encountered Mr. Moon very infrequently.

14

believe that resigning from AOL would deter Mr. Moon's harassment.  Indeed, Mr. Moon's

harassment did not end after Ms. Montoya left AOL, as she acknowledges that his e-mails

continued through December 2005.  *See* Pl.'s Resp. (Doc. # 60 at 26).  Accordingly, summary

judgment should be GRANTED on the plaintiff's constructive discharge claim.

**C.  Ms. Montoya Did Not Establish Retaliation Under Title VII.**

  I.  Whether Ms. Montoya Adequately Exhausted her Administrative Remedies

   Title VII also prohibits employers from discriminating against employees in retaliation

for opposing unlawful employment practices.  *See* 42 U.S.C. § 2000e-3(a).  However, as a

prerequisite to a formal suit for retaliation under Title VII, a plaintiff must first file an

administrative charge with the Equal Employment Opportunity Commission ("EEOC") or its

state equivalent; and only those discrimination claims stated in the charge may be maintained in

the subsequent Title VII lawsuit.  *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005).

So long as the factual allegations in the administrative charge are reasonably related to the factual

allegations in the formal litigation, the connection between the charge and the claim is sufficient.

*Id.*  AOL argues that Ms. Montoya failed to detail the instances of alleged retaliation in her

EEOC charge.  *See* Def.'s Mem. (Doc. # 54 at 23-24).  The Court disagrees.

   To be acceptable, a charge must be "sufficiently precise to identify the parties, and to

describe generally the action or practices complained of."  29 C.F.R. § 1601.12(b) (2004).  Ms.

Montoya's charge of discrimination refers to retaliation and it specifies some, though not all, of

the retaliatory acts she later raises in this suit.  Pl.'s Mem. (Doc. # 60 at Exh. Z) ("I believe I have

been discriminated against because of my sex . . . and *in retaliation for reporting sexual

harassment, in violation of Title VII*") (emphasis added).  Also, in her charge, Ms. Montoya

referenced an oral reprimand she received as alleged retaliation for complaining about Mr.

Moon's harassment.  *Id.*  Though her subsequent Title VII claim raises additional instances of

alleged retaliation such as her temporary demotion, written reprimands, and other oral

reprimands, her EEOC charge passes muster as it was reasonably related to the factual allegations

in the formal litigation and precise enough to identify the parties and to describe generally the

practices complained of.  Thus, Ms. Montoya adequately exhausted her administrative remedies

before filing this lawsuit.

II.  Whether Ms. Montoya Established a *Prima Facie* Case of Retaliation Under Title VII

Having resolved the exhaustion issue, the Court now turns to the substantive retaliation

claim.  To establish a *prima facie* case of retaliation under Title VII, Ms. Montoya must show

that (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse

employment action contemporaneous with or subsequent to such opposition or participation; and

(3) there is a causal connection between the protected activity and the adverse employment

action.  *Penry*, *supra* 155 F.3d at 1263-64.

That Ms. Montoya's complaints to AOL about Mr. Moon's harassment were protected

acts is not disputed.  Moreover, Ms. Montoya's verbal and written reprimands, in addition to a

demotion, constitute "adverse employment actions" contemporaneous with such protected acts.

*See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (finding that an

adverse employment action must be something sufficient to "dissuade a reasonable worker from

making or supporting a charge of discrimination.").[7]  This is particularly so regarding the

_____

[7]In her brief, Ms. Montoya repeatedly claims that AOL "belittle[d]" her complaints, and
downplayed the harassment.  *See, e.g.,* Pl.'s Mem. (Doc. # 60 at 26).  Though she may have been
offended by this alleged attitude, its existence would not constitute an adverse employment

demotion, which Ms. Montoya contends led to lost income.  Montoya Dep. 488:7-9.  Also, as noted above, just days after Ms. Montoya contacted the police to report Mr. Moon for violating the restraining order, AOL reprimanded and demoted her.  Such temporal proximity between Ms. Montoya's various complaints about Mr. Moon and the adverse employment actions she suffered, is sufficient for a reasonable jury to infer that the adverse employment actions were caused at least in part by her complaints.  *See, e.g., Trujillo v. PacifiCorp*, 524 F.3d 1149, 1157 n. 5 (10th Cir. 2008) ("[I]n the context of retaliation claims, we have permitted plaintiffs to establish a prima facie case of discrimination by showing only close proximity in time between a protected activity and an adverse action.").[8]  The three elements are thus satisfied.

III. Whether AOL Responded by Articulating a Legitimate, Non-discriminatory Explanation for its Adverse Employment Action

That Ms. Montoya has established a *prima facie* case of retaliation does not conclude the analysis, however.  On the contrary, even after a plaintiff has made a *prima facie* case of retaliation, the defendant may respond by articulating a legitimate, non-retaliatory reason for its adverse employment actions.  *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) (establishing the framework by which courts are to analyze Title VII retaliation claims in the absence of direct evidence); *and Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1227-28

------

action.  *See Sanchez v. Denver Pub. Schools*, 164 F.3d 527, 533 (10th Cir. 1998) ("unnecessary derogatory comments . . . are not included within the definition of adverse employment actions absent evidence that they had some impact on the employee's employment status" and "it follows that not everything that makes an employee unhappy qualifies as retaliation").

[8]Such an inference is especially appropriate in this case because, according to Ms. Montoya's response memorandum, some of the absences occurred in March and April 2005, well before AOL reprimanded her in May 2005, the month in which the amount of Ms. Montoya's complaints about Mr. Moon reached its peak.  *See* Pl.'s Resp. (Doc. # 60 at 16-17).

(10th Cir. 2008).  AOL states that Ms. Montoya's unplanned absences, not her complaints about Mr. Moon, caused the reprimands and the demotion.  Def.'s Reply (Doc. # 65 at 13); *see also* Pl.'s Resp. (Doc. # 60 at Exh. Y) (disciplining Ms. Montoya with a warning for "excessive, unplanned [absences] during a rolling 90 day period").

Indeed, AOL asserts that by May, Mr. Suval, who was one of Ms. Montoya's supervisors, had recorded four unplanned absences within the preceding 90 days.  Sedillo Aff. ¶¶ 33-34.  This led Ms. Sedillo to approve an oral reprimand for excessive absences on May 12.  *Id.*  Then, after that first reprimand, Mr. Suval recorded another unexcused absence, leading to another reprimand on May 26.  Further, Ms. Montoya does not deny that she was absent without permission on the days Mr. Suval recorded.[9]  Montoya Dep. 466:17-22.  AOL has thus articulated a legitimate, non-retaliatory explanation for its actions against Ms. Montoya.

IV. Whether Ms. Montoya Presented Evidence Indicating That AOL's Ostensibly Legitimate Reason for the Demotion and Reprimands was Mere Pretext

Again, however, the analysis is not complete.  Ms. Montoya still may show that AOL's legitimate, non-retaliatory explanation for the adverse employment actions was pretextual by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [its] proffered legitimate reasons . . . that a reasonable factfinder could rationally find them unworthy of credence."  *Rivera v. City & County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004); *see also Vaughn v. Epworth Villa*, 537 F.3d 1147, 1152 n. 3 (10th Cir.

_____

[9]Ms. Montoya's response to the question of whether she was absent on the days AOL alleges was, "I don't know."  Montoya Dep. 466:19.  Such equivocation is insufficient to create a genuine issue of material fact.  *See, e.g., Thomas v. City of Shreveport*, 2007 WL 2480523 *6 (W.D.La. Aug. 30, 2007) (unpublished) ("Plaintiff's evasive "I don't recall" and "I wouldn't think so" responses are not sufficient to create a genuine issue of material fact.").

2008) ("When an employee violates an employer's policies . . . the employer can assert a legitimate, non-retaliatory reason for taking an adverse employment action against the employee. And unless the employee can show that this reason was a pretext for retaliation, the employee will fail to meet her burden under the *McDonnell-Douglas* burden shifting framework.").

As explained above, the plaintiff does not deny that she missed work without preapproval from AOL.  Montoya Dep. 466:17-25, 481:10-482:1.  Nor does she challenge AOL's assertion that its attendance policy required her to request time off at least twenty-four hours in advance, and that she failed to do so on several occasions.  *Id.* at 481:23-482:1. It is thus undisputed that AOL's absenteeism policy—independent of Ms. Montoya's complaints about Mr. Moon—gave it a right to punish Ms. Montoya, and she does not deny that she violated that policy.  *Id.*[10]

Ms. Montoya argues instead that her unexcused absences were caused by Mr. Moon's unauthorized presence at AOL.  *See* Montoya Dep. 484:8-23.  She further points out that a supervisor, Charles Suval, admitted that AOL's acts of discipline against her were related to Mr. Moon's harassment and that they were "unfair."  *See id.* at 484:21-23.  Even accepting that Ms. Montoya's unexcused absences resulted from her attempts to avoid Mr. Moon, that fact is not sufficient to overcome summary judgment for two reasons.

First, AOL did not make exceptions to its policies based on an employee's purported reasons for violating that policy.  *See* Sedillo Aff. (Doc. # 54 at Exh. 2 ¶ 30).  Indeed, AOL had a

---

[10]Ms. Montoya's brief states that her absences occurred well before she was reprimanded and demoted.  This is to imply that the timing of AOL's actions against her—which coincided with her complaints—raises the inference of pretext.  However, she has not presented any evidence to verify this.  Also, she does not deny that she had unexcused absences in May as well. What is more, Ms. Montoya acknowledges that AOL's policy addressed absences occurring anytime within 90 days.  *See* Montoya Dep. 465:12-15 ("so it's not a matter of a single unplanned absence, it's a – it's excessive unplanned absences during a period of time").

longstanding policy on absences; it had not made an exception for Ms. Montoya based on Mr. Moon's harassment; and no legal authority exists for the proposition that AOL was required to make such an exception. *See Arraleh v. County of Ramsey*, 461 F.3d 967, 977 (8th Cir. 2006), *cert. denied*, 127 S.Ct. 2100 (2007) ("Engaging in protected activity does not insulate an employee from disciplin[ary action].").

Second, even if AOL should have made an exception under the circumstances, Ms. Montoya has provided no evidence that she explained the purported reason for her absences to AOL until after she was reprimanded. *See* Montoya Dep. 484:2-485:16 (explaining that after AOL reprimanded Ms. Montoya for the last time, she complained that it was unfair, as AOL was punishing her for absences caused by Mr. Moon's presence at work). In light of the foregoing, AOL's adverse employment actions against Ms. Montoya were based on an objective, legitimate absenteeism policy, and Ms. Montoya has not shown that AOL's invocation of that policy was pretextual. AOL's summary-judgment motion on this claim should thus be GRANTED.

**D.  Ms. Montoya Did Not Establish Intentional Infliction of Emotional Distress.**

Ms. Montoya also asserts a claim intentional infliction of emotional distress ("IIED") against AOL arising under New Mexico tort law. *See* Compl. ¶¶ 69-72 (claiming that AOL willfully inflicted emotional distress on her by "failing to alleviate the harassment by Travis Moon."). For AOL to be liable for IIED, Ms. Montoya must show that: "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and, (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Baldonado v. El Paso Natural Gas Co.*, 176 P.3d 277, 283 (N.M. 2007).

To satisfy the first element, the plaintiff must show conduct which was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. *Castillo v. City of Las Vegas*, 195 P.3d 870, 876 (N.M. App. 2008).  Ms. Montoya's evidence fails to establish this element.  AOL's conduct was neither extreme nor outrageous.  Though Ms. Montoya was unsatisfied with its responses to Mr. Moon's harassment, no reasonable jury could find that AOL's responses, which this Court deemed adequate under its hostile work environment analysis, sufficiently outrageous. *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 41 P.3d 333, 343 (N.M. 2001).  On the contrary, AOL's responses to Ms. Montoya's complaints were prompt and aimed to thwart Mr. Moon's abusive behavior.  Finally, the plaintiff's submissions are devoid of evidence that she suffered any mental distress—let alone distress that was extreme and severe.  Given the foregoing, AOL's summary-judgment motion on Ms. Montoya's IIED claim should be GRANTED.

**E.  Ms. Montoya is Not Entitled to Injunctive Relief**

The final issue the Court must address is Ms. Montoya's request for injunctive relief against AOL.  Compl. at 11 (asking the Court to "enjoin Defendant from further discriminating and retaliating against women").  This request is denied for two reasons.  First, it appears the plaintiff has abandoned it as she did not discuss it in her response. *See* (Doc. # 60).  Second, Federal Rule of Civil Procedure 65(d) ("Rule 65(d)") requires requests for injunctions to be "specific in terms" and "describe in reasonable detail . . . the acts sought to be restrained."  Fed. R. Civ. P.  65(d); *Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004); *see also Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 895 F.2d 659, 668 & n. 5 (10th Cir. 1990) ("[G]enerally, injunctions simply requiring the defendant to obey the law are too vague [to satisfy Rule 65(d)].").  Here,

Ms. Montoya's request for injunctive relief is nothing more than a generalized request asking the Court to force AOL to comply with the law.  It is thus denied.

## Conclusion

In sum, AOL's responses to Ms. Montoya's complaints were prompt and reasonably calculated to stop Mr. Moon's abusive behavior.  Moreover, the harassment by Mr. Moon at AOL and of which AOL had knowledge was not severe enough to support a constructive discharge claim.  Regarding Ms. Montoya's retaliation claim, although she exhausted her administrative remedies and established a *prima facie* case of harassment, AOL responded by articulating a legitimate, non-retaliatory reason for its adverse employment actions; and Ms. Montoya did not provide evidence to indicate this was pretext.  Moreover, Ms. Montoya's claim of IIED fails because AOL's behavior was not outrageous and she did not suffer extreme distress.  Finally, Ms. Montoya's request for an injunction fails because it is too generalized under Rule 65(d).  Accordingly, AOL's summary-judgment motion should be GRANTED.


_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

22